**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RICHARD EUGENE TOKARCIK, JR. | : | |
| | : | |
| Appellant | : | No. 1294 WDA 2024 |

Appeal from the PCRA Order Entered September 19, 2024
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s): CP-33-CR-0000081-2010

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RICHARD EUGENE TOKARCIK JR. | : | |
| | : | |
| Appellant | : | No. 1295 WDA 2024 |

Appeal from the Order Entered September 19, 2024
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s): CP-33-CR-0000083-2010

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RICHARD EUGENE TOKARCIK JR. | : | |
| | : | |
| Appellant | : | No. 1296 WDA 2024 |

Appeal from the Order Entered September 19, 2024
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s): CP-33-CR-0000218-2010

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

|  |  |  |
|---|---|---|
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |
| RICHARD EUGENE TOKARCIK JR. | : |  |
|  | : |  |
| Appellant | : | No. 1297 WDA 2024 |

Appeal from the Order Entered September 19, 2024
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s): CP-33-CR-0000219-2010

|  |  |  |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|  | : | PENNSYLVANIA |
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |
| RICHARD EUGENE TOKARCIK JR. | : |  |
|  | : |  |
| Appellant | : | No. 1298 WDA 2024 |

Appeal from the Order Entered September 19, 2024
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s): CP-33-CR-0000220-2010

BEFORE: OLSON, J., STABILE, J., and KING, J.

MEMORANDUM BY OLSON, J.: **FILED: February 27, 2026**

In this consolidated appeal,[1] Appellant, Richard Tokarcik, appeals from the September 19, 2024 order denying his petition filed pursuant to the Post-Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.[2] We affirm.

---

[1] In a January 8, 2025 *per curiam* order, this Court consolidated *sua sponte* Appellant's five appeals docketed with this Court at 1294 WDA 2024, 1295 WDA 2024, 1296 WDA 2024, 1297 WDA 2024, and 1298 WDA 2024.

[2] The September 19, 2024 order denying Appellant's petitions was entered on trial court dockets: CP-33-CR-0000081-2010 ("Case 81-2010"),
*(Footnote Continued Next Page)*

A panel of this Court previously summarized the relevant facts and procedural history of this case as follows.

> The record reveals that, on March 7, 2011, Appellant pleaded guilty to nine counts of burglary and two counts of access device fraud at the [trial court dockets listed in footnote 1], as well as one count of burglary at trial court docket CP-33-CR-0000217-2010 ("Case 217-2010"). That same day, upon Appellant's waiver of a pre-sentence investigation report, the trial court sentenced Appellant to an aggregate term of 5 to 10 years' incarceration, subject to eligibility for the recidivism risk reduction incentive program after 50 months' incarceration, to be followed by 91 years' probation. [Appellant did not file a direct appeal].
>
> On May 9, 2011, Appellant filed *pro se* a PCRA petition, his first, asserting, *inter alia*, that his guilty plea was unlawfully induced and that his trial counsel was ineffective during the guilty plea colloquy. PCRA counsel was appointed[, the PCRA court dismissed the petition,] and, ultimately, this Court affirmed the order denying Appellant's petition. ***Commonwealth v. Tokarcik***, 2014 WL 10795288 (Pa. Super. filed Oct. 8, 2014) ([non-precedential] memorandum).
>
> In January 2017, while on parole, Appellant committed several new criminal offenses. [***See*** Trial Court Docket Number CP-33-CR-0000132-2017 ("Case 132-2017").] As a result of these new criminal charges, the trial court issued a detainer on January 10, 2017, and Appellant was taken into custody pending a ***Gagnon I***[3] hearing. On January 27, 2017, Mark A.

_____

CP-33-CR-0000083-2010 ("Case 83-2010"), CP-33-CR-0000218-2010 ("Case 218-2010"), CP-33-CR-0000219-2010 ("Case 219-2010"), and CP-33-CR-0000220-2010 ("Case 220-2010") because the petition challenged Appellant's criminal convictions and probation revocation sentences imposed at each of the aforementioned trial court dockets. Appellant filed a separate notice of appeal at each of the aforementioned trial court dockets.

[3] ***Gagnon v. Scarpelli*** 411 U.S. 778 (1973). A ***Gagnon I*** hearing is a pre-revocation hearing at which the Commonwealth must establish that probable cause exists to believe that a probation or parole violation has been
*(Footnote Continued Next Page)*

Wallisch, Esquire ("Attorney Wallisch") [of the Jefferson County Public Defender's Office] entered his appearance on behalf of Appellant in Case 218-2010, Case 219-2010, Case 220-2010, Case 81-2010, and Case 83-2010 (collectively, "the probation revocation cases").

On February 1, 2017, in the probation revocation cases, Appellant was charged with violating the conditions of his probation. Specifically, Appellant was charged with failing "to abide by the laws of the Commonwealth" (Probation Condition #4) and [failing] "to refrain from threatening and overt behavior which threatens or presents a clear and present danger to others" (Probation Condition #10). After conducting a **Gagnon I** hearing, the trial court ordered that Appellant remain in police custody pending the outcome of the underlying charges in Case 132-2017.

In Case 132-2017, a jury convicted Appellant on October 19, 2017, of numerous sex-based offenses involving a minor. **Commonwealth v. Tokarcik**, 2019 WL 5595843, at *1 (Pa. Super. filed Oct. 30, 2019) ([non-precedential] memorandum), *appeal denied*, 233 A.3d 678 (Pa. 2020). [In Case 132-2017, Appellant was represented by John Ingros, Esquire, ("Attorney Ingros") of the Jefferson County Public Defender's Office.] On February 7, 2018, the trial court sentenced Appellant in Case 132-2017 to an aggregate term of 10 to 20 years' incarceration. **Tokarcik**, 2019 WL 5595843, at *2. That same day, the trial court conducted a **Gagnon II**[4] hearing in the probation revocation cases[.] At the conclusion of the hearing, the trial court revoked Appellant's probation in Case 218-2010, Case 219-2010, Case 220-2010, Case 81-2010, and Case 83-2010. The trial court then resentenced Appellant to an aggregate term of 22 to 44 years' incarceration with the sentences set to run consecutively to the sentence imposed in Case 132-2017. **Id.** [Attorney Ingros – counsel for Appellant in the sex offense cases docketed at Case 132-2017 - was present at this proceeding]. Appellant did not file a post-sentence motion or

---

committed. **See Commonwealth v. Ferguson** 761 A.2d 613, 617 (Pa. Super. 2000).

[4] If the trial court finds probable cause at the **Gagnon I** hearing, a second, more comprehensive **Gagnon II** hearing is required before a final revocation decision can be made. **See Ferguson**, 761 A.2d at 617.

appeal his judgments of sentence in the probation revocation cases. As such, Appellant's judgments of sentence in the probation revocation cases became final on March 9, 2018. *See* Pa.R.A.P. 903(a) (stating that, a notice of appeal "shall be filed within 30 days after the entry of the order from which the appeal is taken"); *see also* 42 Pa.C.S.A. § 9545(b)(3) (stating, "a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review").

On May 21, 2020, Attorney Wallisch [(counsel appointed in the probation revocation cases)] filed a motion to withdraw his appearance in Case 218-2010, Case 219-2010, Case 220-2010, Case 81-2010, and Case 83-2010, which the trial court granted the following day. On March 24, 2022, Appellant filed *pro se* a motion to correct an illegal sentence [in the probation revocation cases]. The PCRA court, upon receipt of Appellant's motion, properly considered the motion to be a petition filed pursuant to the PCRA because Appellant's judgments of sentence were final and the motion requested relief contemplated by the PCRA (*i.e.*, correction of an illegal sentence). *See Commonwealth v. Fantuazzi*, 275 A.3d 986, 995 (Pa. Super. 2022) (stating, "regardless of how a petition is titled, courts are to treat a petition filed after a judgment of sentence becomes final as a PCRA petition if it requests relief contemplated by the PCRA"), *appeal denied*, 289 A.3d 41 (Pa. 2022); *see also* 42 Pa.C.S.A. § 9543(a)(2)(vii) (stating that, to be eligible for relief under the PCRA, a petitioner must plead and prove by a preponderance of the evidence that the sentence resulted from the "imposition of a sentence greater than the lawful maximum"). On April 22, 2022, Appellant filed *pro se* an amended PCRA petition. On May 18, 2022, the PCRA court appointed counsel to represent Appellant.

On July 22, 2022, Appellant filed *pro se* a motion to discontinue the March 2022 petition. On August 1, 2022, the PCRA court denied Appellant's *pro se* motion to discontinue his March 2022 petition.

On March 14, 2023, Appellant filed *pro se* a second PCRA petition. On March 20, 2023, the PCRA court, noting that Appellant was represented by counsel, entered Appellant's March 14, 2023 *pro se* petition on the docket and forwarded the petition to counsel.

On April 10, 2023, Appellant filed with the PCRA court a letter directed to his PCRA counsel. In his letter, Appellant stated that he wanted current PCRA counsel to file a motion for the appointment of new counsel on the ground that then-current PCRA counsel failed to respond to Appellant's correspondence and requests for information. Upon receipt of Appellant's *pro se* filing, the PCRA court scheduled a hearing on the matter for July 7, 2023. Meanwhile, on June 29, 2023, Appellant filed *pro se* an amended PCRA petition seeking to amend his March 2023 petition to request reinstatement of his direct appeal rights *nunc pro tunc*.

On July 7, 2023, upon conclusion of a hearing, Appellant filed *pro se* a motion seeking an additional hearing to address his request for the appointment of new PCRA counsel. In his *pro se* motion, Appellant asserted that the PCRA court did not address his request for the appointment of new counsel at the July 7, 2023 hearing.

On July 19, 2023, Appellant filed with the PCRA court a copy of a letter dated July 15, 2023, and addressed to PCRA counsel. In his letter, Appellant stated,

> I believe the only PCRA petition referenced at the [July 7, 2023] hearing was the petition filed prior to your appointment, which was titled "motion to correct an illegal sentence" and filed [on] March [24], 2023. That petition is untimely on its face and does not allege any exception to the time[liness] requirement of 42 Pa.C.S.[A. §]9545.

> I never received notice that you amended that petition to meet any time requirement, nor did you expostulate at the hearing on July 7, 2023[,] to include the PCRA petition filed March [14], 2023, which alleges and included documented proof of newly-discovered facts, which is an exception to the one[-]year time limit of [Section] 9545.

> As this is my first PCRA petition[,] I do believe I have the right to be permitted to file an amended petition with the assistance of counsel and the timeliness requirement of a PCRA petition is an amendable issue.

On July 27, 2023, PCRA counsel filed a response to Appellant's July 7, 2023 motion. On August 8, 2023, the PCRA court denied

> Appellant's March 2022 petition and his March 2023 petition. [Thereafter, Appellant filed an appeal to this Court.]

*Commonwealth v. Tokarcik*, 2024 WL 1883437 *1, *1-*6 (Pa. Super. 2024) (non-precedential decision) (most internal citations and footnotes omitted) (footnotes added).

On appeal, Appellant argued, *inter alia*, that the PCRA court erroneously denied his PCRA petition as untimely. Appellant claimed that, despite a request, Attorney Ingros, prior counsel on the sex offense charges filed at Case 132-2017, was ineffective for failing to appeal the judgments of sentence entered in the probation revocation cases. *Id.* at *9. Appellant argued that Attorney Ingros's ineffectiveness constituted abandonment and his subsequent discovery of this abandonment constituted a newly-discovered fact under Section 9545(b)(1)(ii). *Id.*; *see Commonwealth v. Bennet*, 930 A.3d 1264, 1273 (Pa. 2007) (holding that, where a petitioner's allegation of counsel's ineffectiveness "emanates from the complete denial of counsel," Section 9545(b)(1)(ii) permits that claim to be considered on its merits despite the claim being raised in an untimely PCRA petition); *see also Commonwealth v. Peterson*, 192 A.3d 1123, 1130-1131 (Pa. 2018) (stating that, counsel's abandonment of a defendant (or petitioner, depending on the procedural posture) constitutes ineffectiveness *per se* and is a "newly-discovered fact" for purpose of Section 9545(b)(1)(ii)).

The PCRA court, however, concluded that Appellant's claim of abandonment failed to satisfy Section 9545(b)(1)(ii)'s newly-discovered facts exception. The PCRA court opined:

> To avail himself of [Section] 9545(b)(1)(ii), [Appellant] has to prove both that he was previously unaware that **Attorney Ingros** failed to directly appeal his probation [revocation] sentences and that he could not have ascertained that fact by the exercise of due diligence[. The] record[, however,] indicates quite the opposite.
>
> In a letter to [Appellant] dated July 12, 2017[,] and referencing "**Commonwealth v. Tokarcik** - Attempt SSA and Others," Attorney Ingros discussed the new charges [filed at Case 132-2017] at length, explaining legal principles relevant to concerns his client had apparently raised. He made no mention of the [probation revocation] cases until the final substantive paragraph, where [Attorney Ingros] noted that he was more concerned about what [the trial court] would do with the pending probation violations and assured [Appellant] that he would try to secure a favorable plea offer encompassing all the cases.
>
> When [Appellant] was later sentenced after being found guilty by a jury [in Case 132-2017, Appellant] made it clear that he wanted to appeal. In that regard, when the [trial] court asked[, at the February 7, 2018 hearing,] whether [Appellant] had any questions about his sentences, he responded, "Only to [Attorney] Ingros about what we should appeal." Thereafter, Attorney Ingros filed [a] post-sentence motion [in Case 132-2017 only] and, explaining his intended appellate strategy to [Appellant], detailed why he saw no value in advancing a sentencing claim [for the probation revocation cases]. He added that he would provide copies of all pleadings he filed subsequent to the notice of appeal and[,] because he only filed a notice of appeal at [Case 132-2017], each [copy of a filing] he provided would have referenced only that docket number. [Appellant,] thus[,] should have recognized well within the PCRA's [one-year limitations period] that [Attorney Ingros] had not appealed the [sentences imposed in the probation revocation cases]. [Appellant] was, after all, not a no[v]ice to

the legal system, including the ins[-]and[-]outs of appellate review. The record discloses as much.

To the extent [Appellant] may not have realized from Attorney Ingros's correspondence that his probation [revocation] sentences were not part of the then-pending appeal, [the Superior Court's decisional memorandum] filed October 30, 2019[,] made it perfectly clear, not only that [Case 132-2017] was the only case at issue, but also that counsel had not asked [the Superior] Court to decide anything pertaining to the [probation revocation] sentences. Captioned in part "Petition for Allowance of Appeal from the Order of the Superior Court," our Supreme Court then issued an order on May 13, 2020[,] denying [Appellant's] petition for allowance of appeal[.] Because there was only one [] order [from the Superior Court] to which [the petition for allowance of appeal] could have been referring, [our Supreme Court's] order [denying review] further confirmed that the appellate courts had not been asked to evaluate [Appellant's probation revocation] sentences. Nonetheless, [Appellant] waited nearly [three additional] years to allege that Attorney Ingros was ineffective for failing to file a direct appeal in [the probation revocation] cases.

In light of the above, [Appellant's] claim clearly is not amenable to the newly[-]discovered facts exception. What the record indicates is that [Appellant] had every piece of information he needed to ascertain years ago that Attorney Ingros did not appeal his probation [revocation] sentences. Whether by making the most evident inference when every document he received referenced only [Case 132-2017] or by exercising due diligence to further investigate the apparent implication, [Appellant] certainly should have discovered the omission long before the PCRA's statute of limitations expired. Accordingly, the following admonition from ***Commonwealth v. Carr***, 768 A.2d 1164 (Pa. Super. 2001), is directly on point:

> Trial counsel's failure to file a direct appeal was discoverable during [Carr's] one-year window to file a timely PCRA petition[. Carr] had a full year to learn if a direct appeal had been filed on his behalf. A [tele]phone call to his attorney or the clerk of courts would have readily revealed that no appeal had been filed. Due diligence require[d] that [Carr] take such steps to protect his own interests.

- 9 -

> *Id.* at 1168.  In this case, [Appellant] knew as early as March [] 2018 that Attorney Ingros did not intend to appeal his [probation revocation] sentence[s], and every document he received after that should have confirmed that counsel had not changed his mind.  Yet [Appellant] failed to reach out to his attorney, the Jefferson County clerk of courts, or anyone else who might have had the relevant knowledge until long after the PCRA's statute of limitations [] expired for [the probation revocation] cases.  Accordingly, [the PCRA] court reaches the same conclusion that [the Superior Court] reached in *Carr*, "The mere fact that [Carr] alleges his trial counsel was ineffective for not filing his appeal does not save his petition from the PCRA's timeliness requirements."

PCRA Court Opinion, 8/8/23, at 2-3 (record citations, some case citations, original brackets, and extraneous capitalization omitted; emphasis added).

On appeal, however, a panel of this Court concluded that it could not "find record support for the PCRA court's determination that Appellant was represented, for purposes of the probation revocation cases, by Attorney Ingros."  *Id.* at *11.  Instead, we determined that the "record unequivocally establishe[d] that Attorney Wallisch represented Appellant in the probation revocation cases."  *Id.*  Because we determined that the PCRA court erroneously assumed that Attorney Ingros, as opposed to Attorney Wallisch, represented Appellant in the probation revocation cases, we vacated the PCRA court's order and remanded the matter for an evidentiary hearing.  We further directed the PCRA court, during the evidentiary hearing, to "develop a factual record analyzing the actions, and inactions, of relevant counsel, namely Attorney Wallisch, to determine if **Attorney Wallisch** abandoned Appellant for purpose of the newly-discovered facts exception (**see Bennett**, **supra**)

- 10 -

and when Appellant could have reasonably learned of the abandonment through the exercise of due diligence." *Id.* at *12 (emphasis in original).

As directed, the PCRA court convened an evidentiary hearing on August 27, 2024, during which Attorney Wallisch, Attorney Ingros, and Appellant testified. Ultimately, on September 19, 2024, the trial court issued an order denying Appellant PCRA relief. This timely appeal followed.

Appellant raises the following issue for our consideration:

Whether the PCRA court erred in denying [Appellant's PCRA] claim for ineffective assistance of counsel for counsel's failure to file a requested appeal after [Appellant] was resentenced?

Appellant's Brief at 4.

On appeal, Appellant argues that the PCRA court erred in holding that he failed to satisfy the newly-discovered fact exception set forth in Section 9545(b)(1)(ii). He argues that the testimony presented during the August 27, 2024 evidentiary hearing established that he was "abandoned by Attorney Ingros and Attorney Wallisch" because neither counsel appealed his judgments of sentence in the probation revocation cases after he specifically requested them to do so. Appellant's Brief at 24. Appellant further claims that he was unaware of counsels' failure and, despite his due diligence, he could not discover their failure to file a direct appeal on his behalf. *Id.* at 33. We disagree.

Our scope and standard of review of an order denying a PCRA petition is well-settled. Proper appellate review of a PCRA court's dismissal of a

petition is limited to an examination of "whether the PCRA court's determination is supported by the record and free of legal error." ***Commonwealth v. Miller***, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Lawson***, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." ***Commonwealth v. Hickman***, 799 A.2d 136, 140 (Pa. Super. 2002) (citation omitted). In contrast, we review the PCRA court's legal conclusions *de novo*. ***Commonwealth v. Henkel***, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*), *appeal denied*, 101 A.3d 785 (Pa. 2014).

It is undisputed that Appellant's PCRA petition is patently untimely. ***See Tokarcik***, 2024 WL 1883437 at *7 ("Appellant filed *pro se* the March 2022 petition on March 24, 2022 more than three years after the deadline for filing a timely PCRA petition. Moreover, Appellant filed *pro se* the March 2023 petition on March 14, 2023, more than four years after the deadline for filing a timely PCRA petition. Therefore, Appellant's petitions are both patently untimely."). The only issue, therefore, is whether his current claim of abandonment satisfies Section 9545(b)(1)(ii)'s newly-discovered fact exception.

We previously explained:

To invoke the newly-discovered facts exception, a petitioner must plead and prove facts that were unknown to the petitioner despite the exercise of due diligence. ***Commonwealth v. Reid***, 235 A.3d 1124, 1144 (Pa. 2020), *citing* 42 Pa.C.S.A. § 9545(b)(1)(ii). "Due diligence does not require perfect vigilance and punctilious care, but merely a showing the party [] put forth reasonable effort to obtain the information upon which a claim is based." ***Commonwealth v. Cox***, 146 A.3d 221, 230 (Pa. 2016) (citation and original quotation marks omitted). The petitioner must offer "evidence that he[, or she,] exercised due diligence in obtaining facts upon which his[, or her,] claim was based." ***Id.*** at 227, ***citing Commonwealth v. Breakiron***, 781 A.2d 94, 98 (Pa. 2001). The question of whether a petitioner, based upon the circumstances of a particular case, would have been unable to discover the newly-discovered fact notwithstanding the exercise of due diligence is a question that requires fact-finding, and the PCRA court, as the fact-finder, should determine whether a petitioner demonstrated this requirement of the exception. [***Bennett***, 930 A.2d at 1274].

\*\*\*

It is well-established that an allegation of ineffectiveness is, typically, not sufficient to overcome an otherwise untimely PCRA petition. ***Commonwealth v. Gamboa-Taylor***, 753 A.2d 780, 785 (Pa. 2000) (stating that, a claim for ineffective assistance of counsel does not save an otherwise untimely petition for review on the merits); ***see also Commonwealth v. Robinson***, 139 A.3d 178, 186 (Pa. 2016) (stating that, our Supreme Court "has never suggested that the right to effective PCRA counsel can be enforced *via* an untimely filed PCRA petition").

[As noted above, however, i]n ***Bennett***, ***supra***, our Supreme Court carved out a narrow exception to the decision announced in ***Gamboa-Taylor***. The ***Bennett*** Court held that where a petitioner's allegation of counsel's ineffectiveness "emanates from the complete denial of counsel," Section 9545(b)(1)(ii) permits that claim to be considered on its merits despite the claim being raised in an untimely PCRA petition. ***Bennett***, 930 A.2d at 1273 (stating that, "the analysis set forth in ***Gamboa-Taylor*** and subsequent case law does not apply to situations when counsel abandons his[, or her,] client for purposes of appeal")[.]

- 13 -

> Several years later, our Supreme Court clarified its holding in **Bennett**, **supra**, stating that nothing in **Bennett** or Section 9545(b)(1)(ii) supports a conclusion that a claim of counsel ineffectiveness based upon allegations of abandonment presumptively or automatically overcomes the PCRA jurisdictional time-bar. [**Commonwealth v. Watts**, 23 A.3d 980, 986 (Pa. 2011)]. Rather, to constitute a newly-discovered fact, counsel's abandonment must have been unknown to the petitioner and undiscoverable through the exercise of due diligence. **Id.** Additionally, a petitioner must file a petition invoking counsel's newly-discovered abandonment within one year of discovery. 42 Pa.C.S.A. § 9545(b)(2).
>
> In determining whether PCRA counsel "completely abandoned" a petitioner, our Supreme Court has explained that "the failure to file a requested direct appeal . . . is the functional equivalent of having no counsel at all." **Bennett**, 930 A.2d at 1273, *citing* **Commonwealth v. Halley**, 870 A.2d 795 (Pa. 2005); **see also Peterson**, 192 A.3d at 1131 (explaining that, abandonment arises from counsel's actions, or inactions, that result in the complete deprivation of a client's appellate review).

**Tokarcik**, 2024 WL 1883437 *8 and *9-*10.

A review of the certified record reveals the following facts were established during the August 27, 2024 evidentiary hearing. Initially, Attorney Wallisch testified. He stated that, while he did not recall representing Appellant, the record indicated that he "did at one time represent [Appellant]" in his capacity as Assistant Public Defender in Jefferson County. N.T. Evidentiary Hearing, 8/27/24, at 4. Attorney Wallisch explained that, in his role at the Public Defender's Office, he generally represented individuals who committed probation violations during **Gagnon I** and **Gagnon II** proceedings and during "the appeal process if . . . requested." **Id.** at 8. Attorney Wallisch testified that, during his representation, Appellant was also represented by Attorney Ingros, the Chief Public Defender in Jefferson County, with respect

to his charges in Case 132-2017. Attorney Wallisch explained that he did not attend Appellant's *Gagnon II* proceeding on February 8, 2018 because Appellant's sentencing hearing at Case 132-2017 was also conducted on that date. Hence, Attorney Wallisch stated that "[Attorney Ingros] would have been present for both;" *i.e.*, the *Gagnon II* proceeding and Appellant's sentencing for Case 132-2017. *Id.* Finally, Attorney Wallisch testified that he did not recall having any discussions with Appellant after the February 8, 2018 *Gagnon II* proceeding or Appellant ever asking him to appeal his judgments of sentence. *See id.* at 11 and 14. Attorney Wallisch, however, definitively stated that he "never refused a request for an appeal" and, as such, if Appellant did lodge such a request, he "would have filed an appeal, without . . . question." *Id.* at 14.

Thereafter, Attorney Ingros testified. Attorney Ingros specifically recalled his representation of Appellant and confirmed that he was present and represented Appellant during the February 8, 2018 sentencing/*Gagnon II* proceeding. When asked whether, after the February 8, 2018 hearing, Appellant asked him to file a direct appeal for the judgments of sentence entered in the probation revocation cases, Attorney Ingros stated:

> I've been thinking about this since you gave me this paperwork and like [I] said, we don't have the benefit of having the files. So, I don't know if I have any notes if there were any other letters between us. I'm just trying to go from memory.
>
> \*\*\*
>
> I believe I told [Appellant] that day, I am not filing on those probation violations; you got nothing there. Let me file in the

- 15 -

new case[.]   … I would have told him, if you want those appealed, I'm not doing it, you can contact [Attorney] Wallisch if you want but there's nothing there.

*Id.* at 19-20.

Finally, Appellant testified.  Initially, Appellant stated that the "only correspondence [he] remembere[d] having with [Attorney] Wallisch was at the *Gagnon [I]* hearing" which occurred on February 1, 2017.  *Id.* at 32.  In this same vein, Appellant acknowledged that, after the February 8, 2018 sentencing/*Gagnon II* proceeding, he did not reach out to Attorney Wallisch or specifically ask Attorney Wallisch to appeal his judgments of sentence entered in the probation revocation cases.  *See id.* at 35 (Appellant was asked whether, "[f]ollowing the February 7, 2018 proceeding," he had "the opportunity to talk to [A]ttorney Wallisch regarding your rights to appeal?" Appellant answered: "I don't know.  That question is a loaded question because I would have had the opportunity **had I wrote him a letter** but I just thought he would go over [it] with my attorney," *i.e.*, Attorney Ingros.) (emphasis added).  Appellant, however, testified that he asked Attorney Ingros to appeal his judgments of sentence entered in the probation revocation cases during and after the February 8, 2018 proceeding.  *See id.* at 36-37.  Nonetheless, Appellant admitted that, at that time, Attorney Ingros "made it clear that he was not going to file [such] an appeal."  *Id.* at 40; *see also id.* (Appellant stating: "That's what [Attorney Ingros] said but I demanded an appeal anyways.").

The foregoing establishes, first, that Appellant never asked Attorney Wallisch to file a direct appeal after the February 8, 2018 proceeding. Instead, Appellant specifically admitted that his only contact with Attorney Wallisch occurred during the February 2017 *Gagnon I* proceeding and, despite having the opportunity to do so, he never contacted Attorney Wallisch afterwards. Second, Attorney Ingros rejected Appellant's request for him to appeal Appellant's judgments of sentence entered in the probation revocation cases during and after the February 8, 2018 proceeding. Importantly, Appellant specifically admitted to being aware of Attorney Ingros's position regarding filing a direct appeal at that time. *See id.* at 40. Because Appellant knew, in 2018, that he never asked Attorney Wallisch to file a direct appeal and that Attorney Ingros rejected his request to file a direct appeal, he cannot establish that counsels' abandonment constituted a newly-discovered fact under Section 9545(b)(1)(ii) or *Bennett*, *supra*. We therefore affirm the trial court's order denying Appellant PCRA relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 02/27/2026

- 17 -